IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED for Harrisonburg
MAY 13 2010
JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

| | |
|---|---|
| O'SULLIVAN FILMS, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:09-CV-00062 |
| ) | |
| PRECISION ROLL GRINDERS, INC., ) | **MEMORANDUM OPINION** |
| Defendant/Third-Party Plaintiff, ) | |
| ) | By: Hon. Glen E. Conrad |
| v. ) | United States District Judge |
| ) | |
| WALZEN IRLE GMBH, ) | |
| Third-Party Defendant. ) | |

This matter is before the court on the third-party defendant's motion to dismiss or stay the third-party complaint. For the following reasons, the motion will be granted and the third-party complaint will be stayed.

I.     **Background**

This matter arises out of a dispute between the plaintiff, O'Sullivan Films, Inc. ("O'Sullivan"), and the defendant / third-party plaintiff, Precision Roll Grinders, Inc. ("Precision"), over the sale of a calendar roll. O'Sullivan uses calendar rolls in its production of calendered vinyl and alloy films. Precision maintains, repairs, and services calendar rolls, and also acts as the United States dealer for third-party defendant, Walzen Irle GmbH ("Walzen"), a German calendar roll manufacturer.

According to O'Sullivan's complaint, Precision agreed to sell two calender rolls to O'Sullivan that met certain specifications. The documents comprising the contract include a quote

from Precision dated May 17, 2005 and an O'Sullivan purchase order issued in June 2005. Precision quoted the two new calendar rolls as meeting certain technical specifications.

The rolls were delivered to O'Sullivan, and on February 12, 2007, were put into service. On April 3, 2007, O'Sullivan discovered a crack on the surface of one of the calendar rolls, "calendar roll #4." Both of the new rolls were removed and shipped to Precision, and ultimately to Germany for evaluation by Walzen. Ultransonic testing confirmed that calendar roll #4 was cracked to a depth beyond that specified in the contract and could not be repaired. Post-failure measurements also revealed that the calendar roll did not have the hardness specified by the Precision quote, and was found to have excessive porosity which occurs during solidification of the original casting when the roll is manufactured.

On July 30, 2009, O'Sullivan filed a one-count complaint against Precision alleging breach of contract and warranties. Precision filed its answer, and on October 15, 2009, also filed a third-party complaint against Walzen. According to the third-party complaint, Precision and Walzen entered into a contract on September 30, 2003 (the "Distributor Agreement"), in which the parties agreed that Precision would be the exclusive distributor of calender rolls manufactured by Walzen. The Distributor Agreement, which Precision attached to its third-party complaint, also contains a clause stating that "[a]ny dispute, controversy or claim arising out of or relating to this Agreement or the breach, termination or invalidity thereof shall be settled by arbitration."

When Precision received the two calender rolls from Walzen that were ordered by O'Sullivan, the rolls included a separate document containing certain representations and warranties with respect to the rolls. Precision therefore alleges that Walzen, as the manufacturer of calender roll #4, is responsible for all claims of damage alleged by O'Sullivan, that Walzen breached express

and implied warranties, and that Walzen breached the terms of the Distributor Agreement with Precision. Precision asserts claims of common law indemnification and contribution, as well as contractual indemnification and breach of contract and warranties.

Walzen has now moved to dismiss or stay the third-party complaint, arguing that the Federal Arbitration Act ("FAA") requires dismissal or stay because of an arbitration clause contained in the Distributor Agreement. The parties fully briefed the issues before appearing before the court for a hearing on this motion on May 11, 2010. The matter is now ripe for disposition.

## II. Discussion

The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. A district court must therefore stay a proceeding when a valid arbitration agreement exists and the issues at hand fall within the purview of that agreement. Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002).

The FAA creates a strong presumption in favor of enforcing arbitration agreements and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); see also Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) ("the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration") (citation omitted).

In the present case, it is undisputed that the Distributor Agreement between Precision and Walzen contains an arbitration clause. Article XII of the Distributor Agreement states in pertinent part:

3

> Any dispute, controversy or claim arising out of or relating to this Agreement or the breach, termination or invalidity thereof shall be settled by arbitration in accordance with the rules of the International Arbitration Rules of International Centre for Dispute Resolution of the American Arbitration Association. The arbitration shall be held in New York City and the arbitration proceedings shall be conducted in the English language.

(Distributor Agr. Art. XII.) Several courts have previously found similarly worded arbitration clauses to be "broad" and "capable of an expansive reach." See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996) (describing as "broad" a clause which requires arbitration of any dispute that "arose out of or related to" an agreement); J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988) (construing clause providing for arbitration of "[a]ll disputes arising in connection with" a contract to encompass broad scope of issues). "[T]he test for an arbitration clause of this breadth is not whether a claim arose under one agreement or another, but whether a significant relationship exists between the claim and the agreement containing the arbitration clause." Am. Recovery Corp., 96 F.3d at 94 (citing J.J. Ryan & Sons, 863 F.2d at 321).

The court concludes that the claims asserted by Precision arose under the Distributor Agreement and bear a significant relationship to the Agreement. Precision asserts a claim of breach of contract, and also seeks indemnification and contribution because of a calendar roll supplied to Precision pursuant to the parties' Distributor Agreement. Because an agreement to arbitrate was entered into by the parties, and the claims in the third-party complaint fall within the ambit of that agreement, the FAA requires a stay of the third-party complaint.

Precision argues that Walzen made express and implied warranties directly to O'Sullivan. The court understands Precision's argument to be that, by virtue of warranties made directly to

4

O'Sullivan by Walzen, Precision's claims for "common law indemnification" and "common law contribution" are unrelated to the Distributor Agreement and its arbitration clause. First, the court can ascertain no evidence of an agreement between Walzen and O'Sullivan from what is before it as this time. Moreover, even if this allegation is true, the claims asserted by Precision in its third-party complaint rest not on any supposed relationship between Walzen and O'Sullivan, but instead on the relationship between Walzen, as manufacturer, and Precision, as distributor, of calendar rolls. Because these claims thus bear a significant relationship to the Distributor Agreement, they are subject to the arbitration clause contained therein.

Precision also argues that, pursuant to the Distributor Agreement, Pennsylvania law governs interpretation of the contract, including the arbitration clause. (Distribution Agr. Art. XII(1).) Even if Pennsylvania law were to apply, as Precision contends, "there is no meaningful difference between federal and Pennsylvania law when reviewing the scope of an arbitration clause." See State Farm Mut. Auto. Ins. Co. v. Coviello, 233 F.3d 710, 713 n.1 (3rd Cir. 2000).

Finally, Precision has asked the court to stay the entire litigation in this case pending arbitration of its third-party complaint. O'Sullivan, however, is not a party to the Distributor Agreement and the arbitration clause contained therein. Moreover, O'Sullivan's claim against Precision rests not on the Distributor Agreement, but rather a separate contract between O'Sullivan and Precision that is encompassed by a quote and purchase order. The court declines Precision's request to stay O'Sullivan's complaint pending arbitration of a separate issue between Precision and Walzen.

### III.   Conclusion

For the foregoing reasons, the court will grant Walzen's motion. Because arbitration of the claims in the third-party complaint is required, the court will stay the third-party complaint.

The Clerk is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

**ENTER**: This 13th day of May, 2010.

                                                        _____
                                                            United States District Judge